Balasegarathum v. Barr

BIA
Poczter, IJ
A205 710 146

### UNITED STATES COURT OF APPEALS
### FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 18th day of September, two thousand twenty.

PRESENT:
>       PIERRE N. LEVAL,
>       GERARD E. LYNCH,
>       SUSAN L. CARNEY,
>               *Circuit Judges.*

_____

PIRASATH BALASEGARATHUM,
>       *Petitioner,*

>       v.                                          17-3802
>                                                   NAC

WILLIAM P. BARR, UNITED STATES
ATTORNEY GENERAL,
>       *Respondent.*

_____

FOR PETITIONER:            Visuvanathan Rudrakumaran, Esq.,
                           New York, NY.

FOR RESPONDENT:            Sabatino F. Leo, Trial Attorney,
                           Office of Immigration Litigation,
                           United States Department of
                           Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioner Pirasath Balasegarathum, a native and citizen of Sri Lanka, seeks review of a BIA decision of the BIA affirming the decision of an Immigration Judge ("IJ") denying Balasegarathum's application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Balasegarathum,* No. A 205 710 146 (B.I.A. Oct. 30, 2017), *aff'g* No. A 205 710 146 (Immig. Ct. N.Y. City Feb. 22, 2017). We assume the parties' familiarity with the underlying facts and procedural history in this case, to which we refer only as necessary to explain our decision to deny the petition.

We have reviewed both the IJ's and the BIA's decisions. *Yun-Zui Guan v. Gonzales*, 432 F.3d 391, 394 (2d Cir. 2005). The standards of review are well established. *See* 8 U.S.C. § 1252(b)(4)(B); *Hong Fei Gao v. Sessions*, 891 F.3d 67, 76 (2d Cir. 2018); *Santoso v. Holder*, 580 F.3d 110, 111 (2d Cir. 2009).

## Adverse Credibility Determination

The agency may, "[c]onsidering the totality of the circumstances[,] . . . base a credibility determination on the demeanor, candor, or responsiveness of the applicant," the plausibility of his account, and inconsistencies in his statements or between his statements and other evidence, without regard to whether they go "to the heart of the applicant's claim."  8 U.S.C. § 1158(b)(1)(B)(iii); *see Xiu Xia Lin v. Mukasey*, 534 F.3d 162, 163–64 (2d Cir. 2008).  We "defer . . . to an IJ's credibility determination unless, from the totality of the circumstances, it is plain that no reasonable fact-finder could make such an adverse credibility ruling."  *Xiu Xia Lin*, 534 F.3d at 167; *accord Hong Fei Gao*, 891 F.3d at 76.  We conclude that substantial evidence supports the agency's determination that Balasegarathum was not credible as to his claim that the Sri Lankan army and related paramilitary groups had detained and tortured him based on his Tamil ethnicity and suspected association with the Liberation Tigers of Tamil Eelam ("LTTE").

The agency reasonably relied on inconsistencies in Balasegarathum's description of an August 2010 incident in which he alleged that he was detained and abused.

3

Balasegarathum's allegations implausibly gained over the course of his 2011 Canadian asylum application, his 2014 U.S. application, and his 2015 testimony before the IJ. Balasegarathum did not provide a compelling explanation for his omissions of the most extreme instances of violence from the prior iterations of his account, particularly in contrast to the specific details he earlier provided of less-severe alleged acts of violence. *See Hong Fei Gao*, 891 F.3d at 78 ("[T]he probative value of a witness's prior silence on particular facts depends on whether those facts are ones the witness would reasonably have been expected to disclose."); *Majidi v. Gonzales*, 430 F.3d 77, 80 (2d Cir. 2005) ("A petitioner must do more than offer a plausible explanation for his inconsistent statements to secure relief; he must demonstrate that a reasonable fact-finder would be *compelled* to credit his testimony." (internal quotation marks omitted)).

Contrary to Balasegarathum's argument on appeal, his omissions in the earlier applications were not "trivial," but rather went to the heart of his claim, since they concerned the most serious abuses he allegedly suffered and which

4

purportedly precipitated his decision to leave Sri Lanka.[1]

Having justifiably questioned Balasegarathum's credibility, the agency reasonably relied on his failure to rehabilitate his testimony with reliable corroborating evidence. "An applicant's failure to corroborate his or her testimony may bear on credibility, because the absence of corroboration in general makes an applicant unable to rehabilitate testimony that has already been called into question." *Biao Yang v. Gonzales*, 496 F.3d 268, 273 (2d Cir. 2007). The IJ did not err in declining to assign diminished corroborative weight to letters from family members who were unavailable for cross-examination and to unauthenticated government documents. *See Matter of H-L-H- & Z-Y-Z-*, 25 I.

---

[1] Certain other omissions that the agency pointed to as occurring in the Canadian and U.S. applications are not borne out by the record, however. For example, the agency found that the Canadian application omitted any description of all events occurring before 2008, but the application in fact contained statements regarding abuses suffered while traveling to school and farming and these were alleged to have occurred before 2008. Further, the agency relied in part on an alleged omission from Balasegarathum's U.S. application of an October 2009 event when the army came to his house and searched for contraband, destroyed property, and sexually harassed his sisters. Although his description did not specify the date or the property damaged, Balasegarathum included this allegation in his written U.S. application.

& N. Dec. 209, 215 (BIA 2010) (finding that unsworn letters from the applicant's friends and family did not provide substantial support for the applicant's claims because they were from interested witnesses not subject to cross-examination), *overruled on other grounds by Hui Lin Huang v. Holder*, 677 F.3d 130, 133–38 (2d Cir. 2012); *see also Y.C. v. Holder*, 741 F.3d 324, 332, 334 (2d Cir. 2013) (holding that "[w]e generally defer to the agency's evaluation of the weight to be afforded an applicant's documentary evidence," and deferring to agency's decision to give little weight to letter from applicant's spouse in China).

Balasegarathum's argument that the IJ improperly assigned diminished weight to the father's letter because it was not authenticated is misplaced: the IJ assigned it diminished weight only because its author was an interested party not subject to cross-examination. Although Balasegarathum argues that the IJ could have called witnesses, Balasegarathum, not the IJ, bears the burden of presenting the case. *See* 8 U.S.C. § 1158(b)(1)(B)(i); *see also Chuilu Liu v. Holder*, 575 F.3d 193, 198 (2d Cir. 2009) (holding that "alien bears the ultimate burden of introducing

6

[corroborating] evidence without prompting from the IJ").[2]

Moreover, the IJ was not required to explicitly discuss the medical report prepared in the United States, notwithstanding Balasegarathum's argument to the contrary. *See Zhi Yun Gao v. Mukasey*, 508 F.3d 86, 87 (2d Cir. 2007) (where the agency gives "reasoned consideration to the petition, and ma[kes] adequate findings," it is not required to "expressly parse or refute on the record each individual argument or piece of evidence offered by the petitioner" (internal quotation marks omitted)). Although this report documents that burn scars appear on Balasegarathum's legs, it does not resolve the conflict created by the contemporaneous records of Balasegarathum's medical treatment, which suggest that Balasegarathum did not sustain the burns at the time and in the manner that he now claims. Balasegarathum did not

---

[2] Balasegarathum also argues that, in light of the minimal weight afforded to these letters, the IJ erred in faulting him for not obtaining letters from relatives in Canada and the United Kingdom who were familiar with his case, since they would have been subject to the same criticism. But the IJ did not err in relying, in part, on the absence of this evidence, because Balasegarathum does not challenge the IJ's conclusion that it was reasonably available, and his brother was a firsthand witness to some of the events underlying the petition, who purportedly obtained asylum in the United Kingdom based on related events. *Biao Yang*, 496 F.3d at 273.

compellingly explain the inconsistency created by his contemporaneous medical records. *See Majidi*, 430 F.3d at 80.

The IJ was also not required to explicitly discuss the country conditions evidence that Balasegarathum adduced; in any event, this evidence did not corroborate the particular past abuses that Balasegarathum claimed to have suffered. *See Zhi Yun Gao*, 508 F.3d at 87.

Given these significant omissions and inconsistencies and the lack of reliable corroboration in the record, we decide that substantial evidence supported the agency's adverse credibility determination. *See Xiu Xia Lin*, 534 F.3d at 165-66. That determination is dispositive of asylum, withholding of removal, and CAT relief insofar as those claims were based on Balasegarathum's individualized claims of past harm and fear of future harm. *See Paul v. Gonzales*, 444 F.3d 148, 156-57 (2d Cir. 2006).

Pattern or Practice Claims

An adverse credibility determination does not doom an application for relief if the claim has a factual predicate that is not tainted by the adverse credibility determination and turns on objective evidence. *See id.* An applicant may still qualify for asylum by proving "that there is a pattern

or practice in his or her country . . . of persecution of a group of persons similarly situated to the applicant on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 C.F.R. § 1208.13(b)(2)(iii)(A). To do so, an applicant must demonstrate that the harm to the group is "so systemic or pervasive as to amount to a pattern or practice of persecution." *Mufied v. Mukasey*, 508 F.3d 88, 92 (2d Cir. 2007) (quoting *In re A-M-*, 23 I. & N. Dec. 737, 741 (BIA 2005)). On review of the record, however, we agree with the agency that Balasegarathum failed to show a pattern or practice of persecution of ethnic Tamils or returning asylum seekers.

The IJ provided a thorough and accurate review of the record evidence related to Balasegarathum's alleged fear as a Tamil and a failed asylum seeker. Based on the significant number of Tamils living in Sri Lanka, the considerably improved conditions for Tamils since Balasegarathum's departure, and the absence of evidence showing that similarly situated returning asylum seekers have been subject to recent abuses, the agency did not err in concluding that Balasegarathum did not establish a pattern or practice of

9

persecution of Tamils and returning asylum seekers in Sri Lanka.  *See* 8 C.F.R. § 1208.13(b)(2)(iii)*; see also Santoso*, 580 F.3d at 112 & n.1 (upholding IJ's pattern or practice determination regarding treatment of Catholics where factual findings were supported by country conditions evidence in record that violence was localized and people were free to practice their faith)*; In re A-M-*, 23 I. & N. Dec. at 741.

Each of Balasegarathum's challenges to these determinations is unpersuasive.  First, the agency did not rely excessively on the U.S. State Department reports: the IJ explicitly discussed a significant portion of Balasegarathum's country conditions evidence, and we "presume that [the agency] has taken into account all of the evidence before [it], unless the record compellingly suggests otherwise."  *Xiao Ji Chen v. U.S. Dep't of Justice*, 471 F.3d 315, 336 n.17 (2d Cir. 2006)*; see also id.* at 341–42 (recognizing that State Department reports are "usually the best available source of information on country conditions").  Second, the agency considered whether Balasegarathum was at risk of being perceived as an LTTE supporter and therefore persecuted because he was both an ethnic Tamil and a returning asylum seeker, and

10

reasonably concluded that the evidence regarding abuses against Tamils returning to Sri Lanka from abroad did not establish a pattern or practice of persecution against this group. Third, the agency was not required to reach the same conclusion regarding the existence of a pattern or practice of persecution that it reached in a prior unpublished decision. Even accepting Balasegarathum's claim that the agency was evaluating the same background evidence, "unpublished opinions of the BIA have no precedential value." *Ajdin v. Bureau of Citizenship and Immig. Servs.*, 437 F.3d 261, 264–65 (2d Cir. 2006). Finally, because Balasegarathum was found not credible as to his individualized claimed fear of persecution, the Ninth Circuit's "disfavored group" analysis in *Sael v. Ashcroft*, 386 F.3d 922 (9th Cir. 2004), would not apply to his claim even if we were to adopt it.

Accordingly, the agency reasonably found that Balasegarathum failed to demonstrate a well-founded fear of persecution on account of his Tamil ethnicity and status as a failed asylum seeker, and it did not err in denying asylum, withholding of removal, and CAT relief. *See Paul*, 444 F.3d at 156–57; *see also Lecaj v. Holder*, 616 F.3d 111, 119 (2d

11

Cir. 2010).

For the foregoing reasons, the petition for review is DENIED. All pending motions and applications are DENIED and stays VACATED.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court